**SMITH et al. v. BLACKWELL, Secretary of State, et al.**

No. 4710.

Circuit Court of Appeals, Fourth Circuit.

Oct. 21, 1940.

Marion W. Seabrook, of Sumter, S. C. (C. B. Ruffin, of Hartsville, S. C., on the brief), for appellants.

T. C. Callison, Asst. Atty. Gen., and John M. Daniel, Atty. Gen. of South Carolina (M. J. Hough, Asst. Atty. Gen., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This suit was instituted in the court below by qualified electors of the State of South Carolina to obtain a declaratory judgment to the effect that the South Carolina election law as administered is violative of the requirements of the federal statutes, in that it does not adequately preserve secrecy of the ballot, and to obtain an order requiring the "names of all candidates for all political parties to be printed on the same tickets, which may be marked in private and curtained booths according to the principles of the so-called Australian system of voting, or any other system that will in truth and fact assure secrecy", and enjoining the use of any other form of ballot or method of voting. The defendants were the Secretary of State of South Carolina and the Commissioners of Federal Elections in certain counties of the state. From an order dismissing the complaint, the plaintiffs have appealed.

The South Carolina election law is contained in sections 2298–2309 of the Code of Laws of South Carolina of 1932. Section 2304 thereof relates to the form of ballots and the manner of voting and is as follows: "There shall be three separate and distinct ballots, as follows: One ballot for United States Senator, Representatives in Congress and Presidential electors; and one ballot for Governor, Lieutenant Governor, state officers, Circuit Solicitors, members of the House of Representatives, State Senator, county officers and one ballot for all Constitutional amendments and special questions, each of three said boxes to be appropriately labeled; which ballots shall be of plain white paper and of such width and length as to contain the names of the officer or officers and question or questions to be voted for or upon, clear and even cut, without orna-

ment, designation, mutilation, symbol or mark of any kind whatsoever, except the name or names of the person or persons voted for and the office to which such person or persons are intended to be chosen, and all special questions, which name or names, officer or officers, question or questions shall be written or printed or partly written or partly printed thereon in black ink; and such ballot shall be so folded as to conceal the name or names, question or questions thereon, and so folded shall be deposited in a box to be constructed, kept and disposed of as herein provided by law, and no ballot of any other description found in either of said boxes shall be counted."

There is nothing in any of these sections which imposes upon any of the defendants any duties with respect to furnishing ballots for the use of the voters or exercising supervision of any sort over the manner in which voting is conducted. The Secretary of State has nothing to do with the election until after the voting is concluded and the returns are being canvassed, and the federal commissioners of election are required, so far as the voting is concerned, merely to appoint managers to conduct the election and to provide ballot boxes. In Gardner v. Blackwell, 167 S.C. 313, 166 S.E. 338, 340, the Supreme Court of South Carolina, in interpreting these sections, said:

"We have examined carefully the sections of our Code of laws to which we have already adverted, and, in addition thereto, sections 2310 to 2316, volume 2, of the Code, relating to 'The Board of County Canvassers,' and sections 2317 to 2329, Id., under the title of 'The Board of State Canvassers.' We have not found in any of these statutes any provision whatever authorizing or requiring the Governor of the state, the secretary of state, the state board of canvassers, the county board of canvassers, the election commissioners, either federal or state, or managers of elections, to print, provide, or furnish ballots for any general election. On the contrary, it appears to us that the duty of printing or providing ballots for the general elections has not been imposed by any statute upon any officer, state or county. The Constitution of the state is likewise absolutely silent in this regard.
* * *

"It appears from the record here, and from the history of the conduct of gen-

eral elections in this state, of which this court may take judicial notice, a fact which the petitioners do not attempt to controvert, that continuously since 1882, in the general elections of this state, the ballots voted have been such as were furnished by the respective political parties participating in such election, and that on such ballots there have appeared only the names of the candidates for the respective offices put in nomination by such political parties, and the offices voted for. At no time throughout all these years has any ballot been used in any general election which contained the names of all the candidates for any office, state or federal, in such election.

"The 'custom and practice,' admitted by the petitioners, has been for any political party desiring to take part in a general election to have printed and provided for use of the voters such ballots as they desired, on which appeared only the names of the candidates of that party, and the respective offices for which such candidates were voted. That 'custom and practice,' in our opinion, has conformed with the statutory provisions; certainly they have not been in conflict therewith.

\* \* \*.

"As we have already indicated, there is no provision in our laws requiring any official, the secretary of state or other official, to give instructions to the commissioners of election or the managers as to the manner of conducting elections."

■ As the defendants here are not charged with any duty with respect to furnishing ballots or the manner of conducting elections, it is clear that there is no justiciable controversy between them and plaintiffs. Plaintiffs ground their complaint on the right to a secret ballot and to be free from intimidation or coercion in the exercise of the voting franchise; but, as the defendants are charged by law with no duties respecting the matters complained of, it is clear that plaintiffs have no controversy with them, and may not use a suit against them as a vehicle for obtaining from the court a declaration, binding upon no one, as to their rights under the law. For a matter to come within the jurisdiction of the court under the Declaratory Judgment Act, Jud.Code § 274d, 28 U.S.C.A. § 400, it must involve an actual controversy between the parties before the court "admitting of specific relief through a decree of a conclusive character." As said by the Supreme Court in Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239-241, 57 S.Ct. 461, 463, 464, 81 L.Ed. 617, 108 A.L.R. 1000:

"The Constitution (article 3, § 2) limits the exercise of the judicial power to 'cases' and 'controversies.' 'The term "controversies," if distinguishable at all from "cases," is so in that it is less comprehensive than the latter, and includes only suits of a civil nature.' Per Mr. Justice Field In re Pacific Railway Comm. (C.C.) 32 F. 241, 255, citing Chisholm v. Georgia, 2 Dall. 419, 431, 432, 1 L.Ed. 440. See Muskrat v. United States, 219 U.S. 346, 356, 357, 31 S.Ct. 250, 55 L.Ed. 246; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 723, 724, 49 S.Ct. 499, 501, 502, 73 L.Ed. 918. The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense. \* \* \* A 'controversy' in this sense, must be one that is appropriate for judicial determination. Osborn v. United States Bank, 9 Wheat. 738, 819, 6 L.Ed. 204. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. United States v. Alaska S. S. Co., 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808. *The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.*" (Italics supplied).

■ And, in addition to the fact that no one is brought before the court with whom the plaintiffs have a justiciable controversy with respect to the matters set forth in the complaint, we think that the court was without power under the law to afford relief of the kind sought. There is admittedly nothing in the state law which would justify such relief, and we find nothing in the federal law upon which it could be based. Article 1, section 4, of the Constitution of the United States merely provides that "the Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations \* \* \*." For a time, Congress exercised in considerable detail the power

to regulate the manner of conducting Congressional elections. See United States v. Gradwell, 243 U.S. 476, 477, 482-484, 37 S.Ct. 407, 61 L.Ed. 857. At the present time, however, the only provisions of any federal statute relating to the form of ballot or the manner of voting in Congressional elections is that contained in Title 2 U.S.C.A. § 9, which provides: "All votes for Representatives in Congress must be by written or printed ballot, or voting machine the use of which has been duly authorized by the State law; and all votes received or recorded contrary to this section shall be of no effect." There is manifestly nothing in this which authorizes the courts either to set up election machinery by order or to declare that the blanket or Australian form of ballot must be used or that other election practices must be followed. Not only is this true, but where, as here, no provision is made by law for the printing or furnishing of ballots by the public authorities and no appropriation of funds has been made for that purpose, it is difficult to see how any order directing the use of the blanket or Australian ballot could possibly be justified or made effective.

For the reasons stated, the order appealed from will be affirmed.

Affirmed.