The UNITED STATES of America, Qui Tam, George C. Matthews, Plaintiff,

v.

FLORIDA–VANDERBILT DEVELOPMENT CORPORATION, a Delaware corporation, etc., et al., Defendants.

Civ. A. No. 71–369.

United States District Court,
S. D. Florida.

April 12, 1971.

Robert W. Rust, U. S. Atty., and George Kokus, Asst. U. S. Atty., Miami, Fla., for the United States.

Robert Amos, Dept. of the Army Corps of Engineers, Jacksonville, Fla., for the Army.

P. A. Pacyna, Asst. Atty. Gen., Lakeland, Fla., for the State.

Thomas B. DeWolf, of Helliwell, Melrose & DeWolf, Miami, Fla., for Florida-Vanderbilt and Tri-County Engineering.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

ATKINS, District Judge.

Concerned citizens throughout the United States have been seeking novel legal remedies in an effort to prevent environmental destruction. The use of the *qui tam* action to enforce the provisions of Sections 407 and 411 of the Rivers and Harbors Act of 1899 (Title 33, United States Code) has been recently "discovered" by many citizens and conservation groups. In each instance known to this Court, however, the theory has been rejected, and the actions dismissed. See: Durning v. ITT Rayonier, Inc., 325 F.Supp. 446 (W.D.Wash., Oct. 5, 1970); Bass Angler Sportsman Society v. United States Steel Corp., 324 F.Supp. 412 (S.D. Ala., Feb. 8, 1971); Bass Anglers v. U. S. Plywood-Champion Papers, Inc., 324 F. Supp. 302 (S.D.Tex., Feb. 10, 1971); Reuss v. Moss-American, 323 F.Supp. 848 (E.D.Wis., Feb. 23, 1971).

This action, brought by a citizen of Collier County, Florida, in behalf of the United States, seeks criminal penalties and injunctive relief for alleged violations of Sections 407 and 411 by private

corporations and federal and state officers. Plaintiff has alleged violations by all Defendants of the provisions of Sections 401–413 of Title 33 in connection with certain dredge and fill operations in navigable waters adjacent to the Gulf of Mexico in Collier County, Florida. Consideration will be given here only to allegations concerning provisions of Sections 407 and 411, since the provisions of the other sections do not come within the *qui tam* theory.

Section 407, in general, prohibits the discharge of "refuse matter" into the navigable waters of the United States without a permit from the Army Corps of Engineers. Section 411 provides that violators of Sections 407, 408 and 409 are guilty of a misdemeanor, and on conviction shall be punished by a fine not exceeding $2500.00 nor less than $500.00, or by imprisonment. This section also provides that one-half of said fine is to be paid to the person or persons giving information which shall lead to conviction.

█ "*Qui tam*" is an abbreviation of the Latin phrase *qui tam pro domino rege quam pro si ipso in hac parte sequitur,* translated in Osborne's Concise Law Dictionary (5th ed.) as "Who sues on behalf of the King as well as for himself." It is an action brought by an informer on behalf of the government to seek civil penalties for violation of a statute.

Apparently, the current popularity of the *qui tam* action was induced by a statement in a Congressional pamphlet entitled "Our Waters and Wetlands: How the Corps of Engineers Can Help Prevent Their Destruction and Pollution," prepared by the House Committee on Government Operations, House Report No. 91–917, 91st Cong., 2d Sess. At page 17 of this report the following statement is made:

> The law further specifies that "one-half of said fine" shall be "paid to the person or persons giving information which shall lead to conviction." This provision buttresses the Corps' efficacy in carrying out the Refuse Act in two ways:

(a) * * *

(b) The Supreme Court has ruled that where a statute provides for a reward to the informer, the statute authorizes him, if the Government has not previously instituted a prosecution against the violator, to institute his own suit in the name of the United States (a *qui tam* action) to collect his moiety of the penalty. Such *qui tam* statutes, vesting in an informer the right to recover a moiety of a penalty for a violation in which he otherwise would have no financial interest, "have been in existence for hundreds of years in England, and in this country ever since the foundation of our Government." By making the violator subject to action by private persons stimulated by the hope of a reward, such provisions help to insure against laxity by public officials in enforcing statutes effectuating important public policies.

The cases cited for this proposition were: Francis v. United States, 72 U.S. (5 Wall.) 338, 18 L.Ed. 603 (1866); Adams, qui tam v. Woods, 6 U.S. (2 Cranch) 336, 2 L.Ed. 297 (1805); Marvin v. Trout, 199 U.S. 212, 26 S.Ct. 31, 50 L.Ed. 157 (1905); United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S. Ct. 379, 87 L.Ed. 443 (1943).

Review of these cases reveals that in each instance the statute authorizing the payment of a bounty also authorized actions by the informer in behalf of the government. No such authorization exists here. Furthermore, each of the cited cases involved civil penalties, not criminal penalties, as in this case. The only language which can be found in any case which would seem to authorize such a suit as is attempted here is the dictum of Justice Clark in U. S. ex rel Marcus v. Hess, supra, at page 541, footnote 4, 63 S.Ct. at page 383, in which he stated:

> Statutes providing for a reward to informers which do not specifically either authorize or forbid the informer [*qui tam*] action are construed to authorize him to sue.

The Court in Bass Anglers v. U. S. Plywood-Champion Papers, Inc., supra,

quite correctly found this dictum to state the law too broadly, saying:

> The *qui tam* action depends entirely upon statutory authorization, as it has never found its way into the common law. The action arises only upon a statutory grant. The fact that someone is entitled by statute to share in some penalty or forfeiture does not necessarily also give such person the right to bring an original action to recover such penalty or forfeiture. There must be statutory authority, either express or implied, for the informer to bring the *qui tam* action.

The Court added:

> The Rivers and Harbors Act of 1899 contains no express statutory authority for the *qui tam* action. To the contrary, the language of § 411 of the Act by necessary implication rules out the *qui tam* proceeding, for the statute provides that the informer is entitled to part of the fine only upon the conviction of the person or corporation accused of violating § 407. Without such a conviction, no fine can be imposed in which the informer can share. The informer's rights depend upon (1) a criminal proceeding being brought under § 411; (2) a conviction being obtained in the criminal proceeding; and, (3) the convicting court imposing the fine as punishment for the offense. The informer's rights therefor are entirely dependent upon and inseparable from the criminal proceeding brought by the Department of Justice, the party authorized to institute such suit. Clearly, then, the *qui tam* civil action is not authorized.

It is clear that the four recent decisions by federal district courts are correct: No authority exists under the provisions of the Rivers and Harbors Act for a civil action by an informer in behalf of the government under the *qui tam* theory. Therefore, in this case, as in the above-mentioned cases, Plaintiff has failed to allege a cause of action upon which relief can be granted, and his suit must be dismissed.

It is so ordered.