COMMON CAUSE et al., Plaintiffs,

v.

DEMOCRATIC NATIONAL COMMITTEE et al., Defendants.

Civ. A. No. 61–71.

United States District Court,
District of Columbia.

Aug. 23, 1971.

As Amended Aug. 27, 1971.

Lloyd N. Cutler, Louis F. Oberdorfer, Timothy B. Dyk, Jay F. Lapin, Robert A. Gerard, Vaughn C. Williams, Washington, D. C., for plaintiffs.

Joseph A. Califano, Jr., Steven M. Umin, Alexander E. Bennett, Irvin B. Nathan, Washington, D. C., for defendant Democratic National Committee.

Fred C. Scribner, Jr., E. Victor Willetts, Jr., Washington, D. C., Ralph I. Lancaster, Jr., pro hac vice, Portland, Me., for defendant Republican National Committee.

Henry S. Middendorf, Jr., New York City, Daniel M. Redmond, Suzanne Meyer, James A. Treanor, III, Washington, D. C., for defendant Conservative Party.

## MEMORANDUM OPINION

PARKER, District Judge.

Section 608 of Title 18, United States Code,[1] prescribes limits for individual

---

1. Act of June 25, 1948, c. 645, 62 Stat. 723, 18 U.S.C. § 608, provides in pertinent part:
"Limitations on political contributions and purchases
(a) Whoever, directly or indirectly, makes contributions in an aggregate amount in excess of $5,000 during any calendar year, or in connection with any campaign for nomination or election, to or on behalf of any candidate for an elective Federal office, including the offices of President of the United States and Presidential and Vice Presidential electors, or to or on behalf of any committee or other organization engaged in further-

contributions and purchases in support of campaigns for elective Federal office. Section 609[2] of that Title establishes permissible limits to annual receipts and expenditures by political committees.[3] Both Sections provide penalties of a fine, imprisonment, or both, for violations.

The plaintiffs in this proceeding include Common Cause, a nonprofit, nonpartisan District of Columbia corporation whose announced concern is the promotion of social welfare, civic betterment and social improvement in the United States, with a particular interest in the integrity of the elective process; John W. Gardner, Chairman of Common Cause, and a resident and registered voter in the State of Maryland; Jonathan B. Bingham, Democrat-New York, and Gilbert Gude, Republican-Maryland, present members of the United States House of Representatives who assert their intention to seek reelection in 1972 to the 93rd Congress.

These plaintiffs seek declaratory and injunctive relief against the Democratic National Committee, the Republican National Committee, and the Conservative Party to protect, under these statutes, their alleged private beneficial interests as citizens, voters, campaign contributors and workers, and candidates for elective Federal office.

They contend that the defendants consistently and continually employ and conspire with other parties to use, with impunity, various devices designed to circumvent illegally §§ 608 and 609. They allege that the failure and apparent inability and unwillingness of the Justice Department to prosecute any of these alleged violations during the more than 30-year existence of the statutes makes a mockery of "the prophylactic purposes of these laws which were designed to prevent disparity in contributed financial resources from being a major factor in elections for elective Federal office and to prevent contributors of large amounts from exercising undue influence on the actions of elected Federal officials."[4]

ing, advancing, or advocating the nomination or election of any candidate for any such office or the success of any national political party, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

* * * * *

(b) Whoever purchases or buys any goods, commodities, advertising, or articles of any kind or description, the proceeds of which, or any portion thereof, directly or indirectly inures to the benefit of or for any candidate for an elective Federal office including the offices of President of the United States, and Presidential and Vice Presidential electors or any political committee or other political organization engaged in furthering, advancing, or advocating the nomination or election of any candidate for any such office or the success of any national political party, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

* * * * *

2. Act of June 25, 1948, c. 645, 62 Stat. 723, 18 U.S.C. § 609 provides in pertinent part:
"Maximum contributions and expenditures
 No political committee shall receive contributions aggregating more than $3,000,000, or make expenditures aggre-gating more than $3,000,000, during any calendar year.

* * * * *

 Any violation of this section by any political committee * * * shall be punishable by a fine of not more than $1,000 or imprisonment of not more than one year, or both; and, if the violation was willful, by a fine of not more than $10,000 or imprisonment of not more than two years, or both."

3. "The term 'political committee' includes any committee, association, or organization which accepts contributions or makes expenditures for the purpose of influencing or attempting to influence the election of candidates or presidential and vice presidential electors (1) in two or more States, or (2) whether or not in more than one State if such committee, association, or organization (other than a duly organized State or local committee of a political party) is a branch or subsidiary of a national committee, association, or organization;"

* * * * *

Act of June 25, 1948, c. 645, 62 Stat. 719, as amended May 24, 1949, c. 139, § 9, 63 Stat. 90, 18 U.S.C. § 591.

* * * * *

4. Complaint, at p. 8.

They move the Court to join as class plaintiffs all registered voters in the several states and the District of Columbia, all citizens who make lawful contributions to candidates of their choice for elective Federal office or to political committees and political organizations, all citizens who otherwise participate in campaigns for the election of such candidates, and all members of Common Cause who are also members of the aforesaid classes. They also seek to include all political committees and political organizations as class defendants.

The immediate issues before the Court are presented by the defendants' motions to dismiss. They assert that the complaint fails to state a cause of action; lack of jurisdiction of the subject matter; lack of standing of the plaintiffs to sue; lack of justiciability; lack of an actual case or controversy; and, the absence of irreparable injury. They oppose the motion for designation of the proceedings as a class action.

The Court concludes that the motions to dismiss the complaint should be denied as to Common Cause, John W. Gardner and the designated members of Common Cause; and granted, without prejudice, as to Congressmen Bingham and Gude. Further, the Court concludes that the motion for a class action should be denied as to all except the designated members of Common Cause.

## JURISDICTION

■ This Court has jurisdiction to consider such equitable actions as this [5] pursuant to former Section 521 of Title 11 of the District of Columbia Code, 1967 Edition. That Code provision gives general equity jurisdiction and venue to this Court where either party is resident or found within the District of Columbia.[6]

■ The assertion of the Republican National Committee that jurisdiction is lacking because of a failure to state a cause of action is misplaced. "Whether the complaint states a cause of action on which relief could be granted * * * must be decided after and not before the court has assumed jurisdiction over the controversy. * * *" Bell et al. v. Hood et al., 327 U.S. 678, 682, 683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Exceptions to that rule—when the claim is wholly insubstantial and frivolous or is clearly immaterial and made solely for the purpose of obtaining jurisdiction— are questionably jurisdictional and, in any event, inapplicable here.

And although the jurisdiction conferred by the District of Columbia Code makes it unnecessary to rely on 28 U.S.C. § 1331(a), it is clear that the underlying economic basis of the complaint—contributions in excess of $5,000 per person and expenditures in excess of $3,000,000 —far exceeds the $10,000 necessary to satisfy the jurisdictional requirement of the federal statute.[7]

---

5. Title 28 U.S.C. §§ 2201 and 2202, providing for declaratory and related relief are also applicable here. But they only afford an additional remedy where the Court otherwise has jurisdiction of the subject-matter and the parties. Putnam et al. v. Ickes et al., 64 App.D.C. 339, 342, 78 F.2d 223, 226 (1935), cert. denied 296 U.S. 612, 613, 56 S.Ct. 132, 80 L.Ed. 434 (1935); E. Borchard, Declaratory Judgments (2d ed., 1941), 232–233. See also Colgrove et al. v. Green et al., 328 U.S. 549, 551, 552, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946).

6. Peoples et al. v. United States Department of Agriculture et al., 138 U.S.App. D.C. 291, 294, 427 F.2d 561, 564 (1970). Also Arlo Tatum, Central Committee for Conscientious Objectors et al. v. Laird et al., 444 F.2d 947 (D.C.Cir., 1971). Section 501(1) of Title 11 of the District of Columbia Court Reorganization Act of 1970, Pub.L. No. 91–358, 84 Stat. 473 (July 29, 1970), allows the District Court to maintain jurisdiction of matters brought pursuant to former Section 521 if properly begun in this Court before February 1, 1971. The original complaint in this action was filed on January 11, 1971.

7. June 25, 1948, c. 646, 62 Stat. 930; July 25, 1958, Pub.L. 85–554, § 1, 72 Stat. 415. See also Arlo Tatum et al. v. Laird et al., *supra*, 444 F.2d at 949–950. Also Reitmeister v. Reitmeister et al., 162 F.2d 691, 694 (2d Cir. 1947).

Furthermore, if §§ 608 and 609 give rise to civil actions as alleged, this suit may be maintained under 28 U.S.C. § 1343(4) which provides jurisdiction

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote. * * * " [8]

In any event the Republican National Committee admits that if there is, in fact, a cause of action the Court has subject matter jurisdiction.[9]

## STANDING

There is no serious impediment to the plaintiffs' standing to sue in this matter. As recently stated by the Supreme Court, "* * * The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Has the party seeking relief "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?" Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). " * * Thus, in terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution. * * * " Flast v. Cohen, supra, 392 U.S. at 101, 88 S.Ct. at 1953 (footnote omitted.) Where the alleged injured right arises under a statute the court may add the additional requirement that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Service Organizations, Inc. et al. v. Camp et al., 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

If John W. Gardner and other voters, contributors, and campaign workers, and Congressmen Bingham and Gude as candidates comply with Sections 608 and 609 while other candidates and their supporters do not, the votes of the plaintiffs and their efforts to effect the nomination or election of individuals of their choice are likely to be, as a practical matter, diluted or even nullified. That is arguably within the zone of interests and the evils which the Congress perceived and accordingly sought to regulate. Plaintiffs "are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes,' * * *, not merely a claim of 'the right, possessed by every citizen to require that the Government be administered according to law. * * * '" Baker v. Carr, supra, 369 U.S. at 208, 82 S.Ct. at 705 (citations omitted.) [10]

8. Title 28 U.S.C. § 1343(4) was designed to conform the Judicial Code with certain provisions of the Civil Rights Act of 1957, Pub.L. No. 85–315, 71 Stat. 637 et seq. (Sept. 9, 1957). See U.S.Code Cong. & Admin.News, 85th Cong., 1st Sess., p. 1976 (1957). But the Court believes that it is applicable to statutes other than the Title 42 civil rights and franchise statutes directly affected by the Civil Rights Act of 1957. This conclusion is justified by the reference to "any Act of Congress providing for the protection of * * * the right to vote," as well as the Federal Government's broad control over the conduct of elections for Federal office pursuant to Art. I., § 4 of the Constitution of the United States. See Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795 (1932); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). §§ 608 and 609 may be said to be designed to protect the effectiveness of an individual's "right to vote."

9. Reply Memorandum of Points of Law and Authorities Filed on behalf of the Republican National Committee in Support of its Motion to Dismiss, filed May 20, 1971, at p. 18.

10. See also Rising et al. v. Brown et al., 313 F.Supp. 824, 826 (C.D.Cal.1970).

Likewise, the declared interest of Common Cause in improving governmental responsiveness to the will of the unorganized mass of citizen voters adequately qualifies it to inititate this action.[11]

## CAUSE OF ACTION

The defendants' allegation that the complaint fails to state a cause of action upon which relief may be granted poses a two-step inquiry. First, under what circumstances may an admittedly criminal statute create or imply a civil cause of action upon which relief can be granted? Second, do those circumstances exist with respect to §§ 608 and 609 of Title 18?

■■ A consideration of the authorities leads this Court to conclude that civil actions may be implied from criminal statutes designed to protect a specific class.[12] This is an old doctrine [13]

and it has found acceptance on the theory that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Bell et al. v. Hood et al., *supra,* 327 U.S. at 684, 66 S.Ct. at 777 (footnote omitted).

In Texas & Pacific Railway Company v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916) the Court upheld a civil damage action arising from a violation of a penal provision of the Federal Safety Appliance Acts.[14] It held, at page 39, 36 S.Ct. at page 484:

"None of the acts, indeed, contains express language conferring a right of action for the death or injury of an employee; but the safety of employees and travelers is their principal object, and the right of private action by an injured employee, even without the

11. " * * * [R]evision of judicial thinking on the standing question has been accompanied by an adjunct line of cases that show a wide disposition to allow associations to appear as representatives of their members and to grant them standing to seek to vindicate the interests of those members. * * * We need not tarry over the question whether the [a]ssociation could have claimed standing on the basis of harm threatened to itself as an organization. This case was brought, and soundly we think, to vindicate the rights of its members." National Automatic Laundry and Cleaning Council v. Shultz et al., 443 F.2d 689 (D.C.Cir., 1971).

12. Additionally, where a penal statute is passed *in the interest of the public* it does not wipe-out a pre-existing common-law tort action in the absence of clear language to the contrary; but where no cause of action existed at common law, no such cause of action arises in the absense of clear language granting such a right. Odell et al. v. Humble Oil & Refining Co., 201 F.2d 123, 127 (10th Cir. 1953), cert. denied 345 U.S. 941, 73 S.Ct. 833, 97 L.Ed. 1367 (1953), and cases cited therein. Certain public emergency, nuisance and trespass situations may also justify extraordinary relief. See In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895), and cases cited therein.

13. "[F]or where-ever a statute enacts anything, or prohibits anything, for the

advantage of any * * * person, that person shall have remedy to recover the advantage given him, or to have satisfaction for the injury done him contrary to law by the same statute; * * *." *Per* Holt, C. J., Anon., 6 Mod. 26, 27 (1794).

Also, Couch v. Steel, 3 E. & B. 402, 118 Eng.Rep. 1193 (Q.B.1854) permitted a civil action by a seaman injured because the owner of the vessel had failed to comply with a penal statute that required certain medicines to be kept on board ship. *Couch,* which has lost some of its vitality in English courts, Glanville Williams, The Effect of Penal Legislation in the Law of Tort, 23 Modern L.Rev. 233, 245 (1960) purported to distinguish Stevens v. Jeacocke, 11 Q.B. 729, 116 Eng. Rep. 647 (1848) on the ground that the statute in *Stevens* merely *prohibited* an otherwise *permissible* act. But that statute also provided for forfeiture to the plaintiff of the improperly gotten property as well as a pecuniary penalty, and the forfeiture was held to be the plaintiff's exclusive, albeit inadequate, remedy. In any event, this alleged distinction appears to have no significant basis other than *stare decisis*; and American courts have not followed it, relying instead on the necessity and appropriateness of a civil action to effectuate the purposes of the statute.

14. Act of March 2, 1893, c. 196; 27 Stat. 531; and subsequent amendments.

Employers' Liability Act, has never been doubted. * * * A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, . . . ."[15]

More recently in J. I. Case Co. et al. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964) the Supreme Court permitted a civil action for rescission or damages to a corporate stockholder with respect to the use of a proxy statement alleged to contain false and misleading statements violative of § 14(a), a penal provision, of the Securities Exchange Act of 1934.[16] In speaking for the Court Mr. Justice Clark noted that

"While this language makes no specific reference to a private right of action, among its chief purposes is the 'protection of investors,' which certainly implies the availability of judicial relief where necessary to achieve that result."

The defendants in this case contend that § 27 of the Securities Exchange Act [17] created a private civil cause of action in Borak. But careful analysis reveals that only *jurisdiction* was based on § 27 of the Act, which gave District Courts jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created" under the Act. But the *cause of action* was implied from § 14(a). In a recent case, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d

619 (1971), Mr. Justice Harlan, in a concurring opinion described the *Borak* test as one of "necessity" or "appropriateness," *Id.*, 91 S.Ct. at 2010, and emphasized the true source of the cause of action in *Borak*. "The exercise of judicial power involved in *Borak* simply cannot be justified in terms of statutory construction, * * *; nor did the *Borak* Court purport to do so." Id., 91 S.Ct. at p. 2008, n. 4. "* * * [T]he cases concerning remedies, implied from statutory schemes, * * * [indicated] a *judicial decision* to accord or not to accord a particular remedy." *Id.*, 91 S.Ct. at p. 2009, n. 6. (Emphasis added.)

The Supreme Court's most definitive statement allowing civil relief for violation of criminal statutes is found in Wyandotte Transportation Co. et al. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967) where the Federal Government was permitted to maintain an *in personam* action against a shipowner for reimbursement of the costs of removal of a negligently sunk vessel. The Court relied only on § 16 of the Rivers and Harbors Act of 1899,[18] which provides criminal penalties for violation of the duty of a shipowner to remove a sunken craft; and it rejected the trial court's conclusion that civil relief was restricted to *in rem* recovery for the salvage value of the sunken vessel pursuant to § 19 of the Act.[19] The Court concluded, at page 202, 88 S.Ct. at page 386,

"* * * Our decisions in cases involving civil actions of private parties based on the violation of a penal stat-

---

15. Subsequently, *Texas & Pacific* was restricted to supply a *federal* cause of action only pursuant to the Federal Employers' Liability Act. Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969); Jacobson v. New York, N. H. & H. R. R. Co., 206 F.2d 153 (1st Cir. 1953), aff'd per curiam, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067 (1954); Moore v. Chesapeake & Ohio Ry. Co., 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934). But the general rule in *Texas & Pacific*, implying

civil actions from penal statutes, is still accepted by the Supreme Court.

16. Act of June 6, 1934, c. 404, § 14, 48 Stat. 895, 15 U.S.C. § 78n(a), as amended.

17. Act of June 6, 1934, c. 404, § 27, 48 Stat. 902, 15 U.S.C. § 78aa, as amended.

18. March 3, 1899, c. 425, § 16, 30 Stat. 1151, 33 U.S.C. § 411.

19. *Id.*, 30 Stat. 1154, 33 U.S.C. § 414.

ute \* \* \* indicate \* \* \* [that i]n those cases we concluded that *criminal liability was inadequate to ensure the full effectiveness of the statute which Congress had intended.* Because the interest of the plaintiffs in those cases fell within the class that the statute was intended to protect, and because the harm that had occurred was of the type that the statute was intended to forestall, we held that civil actions were proper. That conclusion was in accordance with a general rule of the law of torts. See Restatement (Second) of Torts § 286. We see no reason to distinguish the Government, and to deprive the United States of the benefit of that rule." (Emphasis added).[20]

While authority may be found to support the argument that penal statutes do not give rise to civil actions where they are not designed for the benefit of a special class,[21] this Court notes that there are a persuasive number of opinions which have permitted civil actions for violation of penal statutes regulating election procedures. In Rising v. Brown, 313 F.Supp. 824 (C.D.Cal.1970) and Straus v. Gilbert, 293 F.Supp. 214 (S.D. N.Y.1968) injunctive relief was granted to candidates for elective Federal office where their opponents were allegedly violating congressional franking privileges.[22] The only statutory remedy was

---

20. Allen et al. v. State Board of Elections et al., 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed. 2d 1 (1969), emphasized by the plaintiffs, is not precisely on point. There, private litigants were allowed to bring a suit for a declaration that certain election law changes were *subject to* § 5 of the Voting Rights Act of 1965. Pub.L. No. 89–110, 79 Stat. 439, 42 U.S.C. § 1973c. That section prohibits enforcement of the suspect changes pending their approval in accordance with the procedure provided by § 5. As in *Borak, supra,* the Court implied a private cause of action to determine failure to comply with the statute. But § 12 of the Act provides criminal penalties for *interference* with rights secured by, *inter alia,* § 5, not failure to comply with its procedures. It is significant that both the majority and Mr. Justice Harlan, concurring, in *Bivens, supra,* relied on *Borak* and did not even mention *Allen,* a later case.

21. United States v. Claflin, 97 U.S. 546, 24 L.Ed. 1082 (1878); Oppenheim et al. v. Sterling et al., 368 F.2d 516 (10th Cir. 1966), cert. denied 386 U.S. 1011, 87 S.Ct. 1357, 18 L.Ed.2d 441 (1967), rehear. denied, 388 U.S. 925, 87 S.Ct. 2127, 18 L.Ed.2d 1380 (1967), rehear. denied 389 U.S. 1059, 88 S.Ct. 757, 19 L.Ed.2d 861 (1968); Van Daele v. Vinci et al., 294 F.Supp. 71 (N.D.Ill., 1968); Fullerton v. Monongahela Connecting Railroad Company et al., 242 F.Supp. 622 (W.D. Pa.1965); Cooper v. North Jersey Trust, etc., et al., 226 F.Supp. 972 (S.D.N.Y. 1964); Oppenheimer v. Clifton's Brookdale, Inc., 98 Cal.App.2d 403, 220 P.2d 422 (1950), rehear. denied (1950).

Recent dismissals of civil suits to enforce the *qui tam* provisions of § 13 of the Rivers & Harbors Act of 1899 were justified because the relief sought was payment of a percentage of a fine. The civil suits were filed by the *informers* directly against the violators of the statute. Matthews v. Florida-Vanderbilt et al., 326 F.Supp. 289 (S.D.Fla.1971); Reuss v. Moss-American, Inc., 323 F. Supp. 848 (E.D.Wis.1971); Bass Anglers Sportsman Society et al. v. U. S. Plywood-Champion Papers, Inc., et al., 324 F.Supp. 302 (S.D.Tex.1971); Bass Angler Sportsman Society v. United States Steel Corporation et al., 324 F.Supp. 412 (D.Ala.1971); Durning et al. v. ITT Rayonier, Inc. et al., 325 F.Supp. 446 (W.D.Wash.1970). Significantly, in Couch v. Steel, *supra,* one of the early English cases to allow a civil action based on a penal statute, a portion of the penalty belonged to the informer. Unlike these recent Rivers & Harbors Act cases, the plaintiff in *Couch* was the injured party, not the informer.

22. See also Reitmeister v. Reitmeister et al., 162 F.2d 691 (2d Cir. 1947), plaintiff whose phone calls were illegally "published" allowed to maintain a civil action for violation of a penal provision of Communications Act of 1934, 47 U.S.C.A. § 605; Fagot v. Flintkote Company, 305 F.Supp. 407 (E.D.La.1969), damage action allowed for unlawful discharge of employee in violation of § 15(a) (3) of the Fair Labor Standards Act, 29 U.S. C.A. § 215(a) (3), which provides only criminal penalties or injunctive suit by the Secretary of Labor; Kardon et al.

penal. Various state courts have also recognized a cause of action. In Smith et al. v. Higinbothom et al., 187 Md. 115, 48 A.2d 754 (1946) the dismissal of the complaint was upheld because the court concluded the statute in question was not applicable to the defendants, but it did not question the appropriateness of a declaratory judgment regarding activities alleged to violate a state Corrupt Practices Act, a penal statute. And in Pecora v. Queens County Bar Ass'n et al., 46 Misc.2d 530, 260 N.Y.S.2d 116 (1965) the court reached the merits of a private civil action alleging violations of a penal election statute. Also in De Mille v. American Federation of Radio Artists, 31 Cal.2d 139, 187 P.2d 769 (1947), cert. denied, 333 U.S. 876, 68 S.Ct. 906, 92 L.Ed. 1152 (1948), a civil action based partly on alleged violations of the Federal Corrupt Practices Act was dismissed because the Act was held not applicable to the parties and activities involved. But the court indicated that the action could have been sustained if the statute had been applicable.

■ An analysis of the legislative history of §§ 608 and 609 warrants the conclusion that voters, campaign contributors and workers, and candidates whose legitimate resources were incidentally restricted by the Hatch Act or otherwise

overwhelmed by large contributions to such an extent as to undermine and perhaps even nullify their right to vote were the intended beneficiaries of the statutes and comprise a class whose interests may be protected by a private civil action.[23]

In 1939 Congress enacted the Hatch Act[24] to prevent so-called "pernicious political activities." The Act arose ostensibly from complaints that federal relief jobs were being used to coerce campaign help and contributions from the recipients.[25] Sections 608 and 609 were attached to a 1940 amendment extending the provisions of the Act[26] to the District of Columbia and to state and local projects that were partially financed with federal funds.[27]

The legislation sought to correct these practices by prohibiting the solicitation or receipt of campaign contributions from anyone known to be receiving compensation, employment or other benefits from federal relief funds, and further outlawing active participation in political management or political campaigns by lower and middle grade government employees.[28]

The incidental elimination of a major source of traditional Democratic campaign manpower and financial support was apparently unrecognized when the 1939 bill was passed,[29] but was believed

v. National Gypsum Co. et al., 69 F. Supp. 512 (E.D.Pa.1946), rescission and damage action allowed for penal violations of Securities Exchange Act, 15 U.S. C.A. § 78a et seq.

23. It is evident that the Hatch Act was considered only one part of an overall scheme to regulate federal elections. See Remarks of Senator Walsh, 86 Cong.Rec. 2625, 76th Cong., 3d Sess. (March 11, 1940). And the 1955 addition to the District of Columbia Code of a provision, Section 1–1111, for petition for civil relief for failure of a candidate to comply with campaign expenditures limitations— Section 1–1113—does not by itself imply a deliberate decision by the Congress to deny a civil remedy for violations of §§ 608 and 609. On the contrary, it is more likely explained by the lack of a local voice in Congress in 1955.

24. Act of August 2, 1939, c. 410, Pub.L. No. 252, 53 Stat. 1147 et seq.

25. H.Rep.No.1028, 76th Cong., 1st Sess. 1 (July 5, 1939). Also Remarks of Senator Minton, 86 Cong.Rec. 2363, 76th Cong., 3d Sess. (March 5, 1940).

26. Act of July 19, 1940, c. 640, Pub.L. No. 753, 54 Stat. 767 et seq. Remarks of Senator Hatch, 86 Cong.Rec. 2338, 76th Cong., 3d Sess. (March 5, 1940).

27. Act of July 19, 1940, *supra*, 54 Stat. 771, § 14, and 54 Stat. 767, 768, § 12(a), respectively.

28. Act of Aug. 2, 1939, *supra*, §§ 5 and 9 (a), 53 Stat. 1148.

29. Remarks of Senator Minton, 86 Cong. Rec. 2363, 76th Cong., 3d Sess. (March 5, 1940).

a hidden motive behind the near unanimous Republican support.[30]

It was to counter this incidental interference with legal campaign activity, as well as to counter the undue influence of large contributions [31] that the Democratic majority in Congress compelled the adoption of the § 13 campaign contribution limitation [32] that was codified as 18 U.S.C. § 61m and recodified as § 608, and the Section 20 campaign expenditures limitation [33] that became 18 U.S.C. § 61t and was later recodified as § 609.

Accordingly, this Court concludes that §§ 608 and 609 were intended, not to punish otherwise illegal activities, but rather to protect the plaintiffs' interests as voters, campaign workers and contributors, and candidates for elective Federal office by limiting otherwise acceptable practices.[34] And the inability of the Justice Department to enforce these laws [35] emphasizes both the inadequacy of relying upon criminal liability and the lack of reason to fear interference with criminal prosecutions.[36]

30. Remarks of Senator Thomas, 86 Cong. Rec. 2854, 76th Cong., 3d Sess. (March 14, 1970). Also Remarks of Senator Bankhead, 86 Cong.Rec. 2773, 76th Cong., 3d Sess. (March 13, 1940).
"* * * I say that Senators view the Hatch bill in the direction in which it helps them. So we have the spectacle here not of purity on the part of our friends over there but of practical politics, smart politics, Hatch Act politics [Laughter]. They want to "Hatchet" the Democratic Party out of Washington. That is what they want to do with the Hatch Act. They do not want to purify politics. They are the direct descendants and heirs at law and next of kin to Warren Harding, Harry Dougherty, Forbes, Miller, Denby, and Albert B. Fall. They are not pure. [Laughter.] Remarks of Senator Minton, 86 Cong.Rec. 2634, 76th Cong., 3d Sess. (March 11, 1940).

31. See Remarks of Senators Smathers and Bankhead, 86 Cong.Rec. 2721, 76th Cong., 3d Sess. (March 12, 1940). Also Remarks of Senator Bankhead, 86 Cong. Rec. 2773, 76th Cong., 3d Sess. (March 13, 1940) and Senator Minton, 86 Cong. Rec. 2791–2792, 76th Cong., 3d Sess. (March 13, 1940).

32. 86th Cong.Rec. 2852, 2853, 76th Cong., 3d Sess. (March 14, 1940).
"We all know that money is the chief source of corruption. We all know that large contributions to political campaigns not only put the political party under obligation to the large contributors, who demand pay in the way of legislation, but we also know that large sums of money are used for the purpose of conducting expensive campaigns through the newspapers and over the radio; in the publication of all sorts of literature, true and untrue; and for the purpose of paying the expenses of campaigners sent out into the country to spread propaganda, both true and untrue." Remarks of Senator Bankhead, 86 Cong.Rec. 2720, 76th Cong., 3d Sess. (March 12, 1940).

33. H.Rep.No.2376, 76th Cong., 3d Sess. p. 21 (June 4, 1940).

34. The recent United States Supreme Court decisions cited in support of this Court's conclusions undermine the value of the contrary dicta in the earlier cases In re Higdon et al., 269 F. 150 (D.C. 1920) and Smith et al. v. Blackwell et al., 34 F.Supp. 989 (E.D.S.C.1940), aff'd 115 F.2d 186 (4th Cir. 1940).

35. See testimony of Deputy Attorney General Kleindienst, Hearings Before the Subcommittee on Communications of the Senate Committee on Commerce (S. 1, S. 382, S. 956), 92nd Cong., 1st Sess., pp. 516–546 (March 31, 1971) and Hearings Before the Subcommittee on Privileges and Elections of the Committee on Rules and Administration (S. 382), 92nd Cong., 1st Sess., pp. 50–67 (May 24, 1971). And as a general rule the decision whether to prosecute is left to the discretion of the Executive. Powell v. Katzenbach, 123 U. S.App.D.C. 250, 359 F.2d 234 (1965), cert. denied 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966); United States v. Cox, 342 F.2d 167 (5th Cir. 1965), cert. denied, Cox v. Hauberg, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

36. As the Supreme Court cases cited in this opinion indicate, a civil action to protect *private* interests is not an interference with the constitutional safeguards, relied upon by the defendant Democratic National Committee, required for criminal prosecutions which may result in incarceration. United States v. Jalas, 409 F.2d 358 (7th Cir. 1969), involved an attempt by the Government to enforce public interests and interests of union members under a criminal statute—not

If the facts are as alleged,[37] this is a flagrant and irreparable erosion of the right to an effective vote, and, in the absence of an express statutory provision to the contrary, clearly warrants immediate judicial relief.[38]

## JUSTICIABILITY, CASE OR CONTROVERSY

 The defendants' claim of lack of justiciability presents no serious challenge. Powell et al. v. McCormack et al., 395 U.S. 486, 516, 517, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The Court having already concluded that a civil action may be maintained, there can be no doubt that "the duty asserted can be judicially identified and its breach judicially determined * * *," Baker v. Carr, *supra*, 369 U.S. at 198, 82 S.Ct. at 700, as easily as in a criminal action. "Of course the mere fact that the suit seeks protection of a political right does not mean it presents a political question. Such an objection 'is little more than a play upon words.'" *Id.*, at 209, 82 S.Ct. at 706.[39] There is no problem of separation of powers involved and therefore this case is justiciable.

In determining whether there is a live case or controversy, "the question in each case is whether the facts alleged,

under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).[40]

 None of the plaintiffs has made allegations with respect to contributions or expenditures for specific currently active candidates whose election they oppose. This is a fatal flaw as to the candidate-plaintiffs.[41] While Congressmen Bingham and Gude have announced their candidacies for reelection, the identity and conduct of their potential opponents is uncertain and conjectural and, thus, this Court does not have before it a factual situation or a delineation of issues on which it may properly rule. It cannot therefore be said that irreparable harm may result if the candidate-plaintiffs are required to wait until the specific activities they challenge become more evident. Until then the complaint should be dismissed without prejudice as to them.

 On the other hand, the interests of the voter-, worker-, and contributor-plaintiffs as well as Common Cause are

interests peculiar to the Government as an institution as in Wyandotte Transportation Co. v. United States, *supra*. The result may have been different if union members had brought the action to protect their own interests. Nor is there a pending prosecution. Contrast Younger v. Harris, et al., 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

37. Although the defendants have not questioned whether the facts alleged by the plaintiffs are sufficient to state a claim under the terms of §§ 608 and 609, the Court believes that the general allegations do state violations of the letter and spirit of the statutes. See Hearings, Subcommittee on Privileges and Elections, *supra*, at pp. 56, 57.

38. This Court believes that a conspiracy to violate § 608 will support a cause of action. See In re Debs, *supra*. And at this time the Court "need express no opinion about the appropriateness of co-

ercive relief in this case, for petitioners sought a declaratory judgment, . . . ." Powell et al. v. McCormack et al., 395 U.S. 486, 517, 89 S.Ct. 1944, 1962 (1969).

39. Baker v. Carr, *supra*, at 209, 82 S.Ct. 691 (citation omitted.) "* * * The nonjusticiability of a political question is primarily a function of the separation of powers." *Id.*, at 210, 82 S.Ct., at 706. Even "Guaranty Clause claims involve those elements which define a 'political question,' and for that reason and no other, they are nonjusticiable." *Id.*, at 218, 82 S.Ct., at 710.

40. Also Golden v. Zwickler 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

41. See Rising v. Brown, *supra*; Straus v. Gilbert, *supra*; Pecora v. Queens County Bar Ass'n. et al., *supra*.

threatened by practices of a continuing nature, capable of repetition, yet essentially evading review. Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).[42] The practices attributed to the major political campaign committees are alleged to have existed for more than 30 years with respect to the Democratic National Committee and the Republican National Committee and for several years as to the Conservative Party. There is no allegation or evidence that such practices are to be voluntarily abandoned. Thus the presentation and delineation of the challenged activities is sufficient. And the difficulties inherent in examining financial arrangements for hundreds of candidates makes it likely that delay would make the practical election results of a successful litigation illusory.

Of course it may be that certain candidates supported by the plaintiffs benefit from the alleged illegal activities of the major political campaign committees. But the clear political activism displayed by the plaintiffs makes inevitable their continuing opposition to many of the candidates and national policies that will receive direct or indirect support from the challenged practices.[43] An actual litigable controversy presently exists.[44]

### CLASS ACTION

■ Finally, this case will be designated a class action, pursuant to Rule 23(a), (b) (1) and (b) (2) of the Federal Rules of Civil Procedure, 1970 ed., as to all members of Common Cause who are also registered voters or who make lawful contributions from time to time to candidates or to political committees and political organizations for purposes of supporting elections for Federal elective office, or who otherwise participate in campaigns of candidates for elective Federal office. Their interests coincide with the activities of Common Cause in seeking to uphold the effectiveness of citizen participation in the Federal election process.

However, the innumerable and diverse interests, candidates, campaign organizations and practices that would be involved makes this action inappropriate for class-plaintiff designation as to voters, contributors and campaign workers who have not joined Common Cause, and class-defendant designation as to all political committees and political organizations. Many of those proposed class-plaintiffs may suffer no injury on account of the alleged activities and may in fact hold different views of the obligations imposed by §§ 608 and 609. And the activities of unnamed political committees and political organizations may be either in complete conformity with the views expressed by the plaintiffs or at least substantially different from those of the Democratic National Committee, the Republican National Committee and the Conservative Party.

Counsel for plaintiffs shall present an appropriate Order within five days.

---

42. Also Southern Pacific Terminal Co. v. Interstate Commerce Commission et al., 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911) ; Shakman et al. v. Democratic Organization of Cook County et al., 435 F.2d 267 (7th Cir. 1970), rehearings denied 1970, cert. denied 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971).

43. Contrast Hall et ux. v. Beals et al., 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

44. The Court is mindful that on August 5, 1971, a bill was passed by the Senate (S. 382) amending 18 U.S.C. § 608 and repealing 18 U.S.C. § 609. A similar bill is pending in the House of Representatives. These developments, while salutary are not considered sufficient reason to avoid the issues presented at this time.