**DEMOCRATIC NATIONAL COMMIT-
TEE et al., Plaintiffs,**

v.

**James W. McCORD et al., Defendants.**

**In re Carl BERNSTEIN et al.,
Movants,**

**and The New York Times Company,
Intervenor.**

**Civ. A. Nos. 1233–72, 1847–72, 1854–72.**

United States District Court,
District of Columbia.

March 22, 1973.

Joseph A. Califano, Jr., John G. Kest-
er, Washington, D. C., John B. Kuhns,
for Movants Bernstein, Woodward, Gra-

ham, and Simons of the Washington Post.

Francis L. Casey, Jr., Washington, D. C., for Movants Collins, O'Leary, Polk, and Volz of the Washington Evening Star and Daily News.

John H. Pickering, Timothy Dyk, Washington, D. C., for Movant Fischer of Time Magazine.

Donald J. Mulvihill, Washington, D. C., Floyd Abrams and Eugene R. Scheiman, New York City, for Movant Crewdson of The New York Times and Intervenor The New York Times Co.

Kenneth Wells Parkinson, Thomas Penfield Jackson, James P. Schaller, Paul L. O'Brien, W. Frank Stickle, Jr., Ralph N. Albright, Washington, D. C., for Committee for the Re-election of the President, Finance Committee to Re-elect the President, Maurice H. Stans, and Francis L. Dale.

Daniel A. Rezneck, Washington, D. C., for The Reporters Committee for Freedom of the Press, as amicus curiae.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I.  BACKGROUND

This cause comes before the Court on Motions to Quash Ten Subpoenas issued and served on behalf of the Committee for the Re-election of the President (CRP), the Finance Committee to Re-elect the President (FCRP), Francis L. Dale, Chairman of CRP, and Maurice H. Stans, Chairman of FCRP, all of whom are parties in these civil actions arising out of the break-in on June 17, 1972, at the Watergate offices of the Democratic National Committee (DNC).[1]

The subpoenas were issued to the Movants herein, who are reporters for, or managing personnel of, The New York Times, The Washington Post, the Washington Star-News and Time Magazine. In identical terms the subpoenas command the summoned members of the press to appear for depositions and bring with them all documents, papers, letters, photographs, audio and video tapes relating in any way to the Watergate "break-in" or other political espionage operations against the DNC and associated organizations and individuals; all manuscripts, notes, or tape recordings of communications during the period June 17, 1972, through November 7, 1972, with a broad range of DNC officials and employees, persons connected with the McGovern-Shriver campaign, the FBI, the Metropolitan Police Department, or the United States Attorney's Office for the District of Columbia; and all drafts, copies, and final drafts of news material relating in any way to the Watergate break-in or other political espionage operations against the DNC or connected entities and individuals. All of those summoned have moved the Court to quash the subpoenas; some of them have alternatively requested protective orders.

### II.  ISSUES

There are basically two issues raised by the Motions under consideration. The first is primarily a matter of procedure, namely, whether the subpoenas are so sweeping as to be unreasonable and oppressive and thus invalid under Rules 26 and 45 of the Federal Rules of Civil Procedure. The second issue is infinitely more important under the current state of the law and involves a fundamental constitutional right. Simply put, it is whether these subpoenas to the press are valid under the First Amendment to the United States Constitution.

1.  Democratic National Committee et al. v. James W. McCord et al., Civil Action No. 1233–72; Maurice H. Stans, et al. v. Lawrence F. O'Brien, Civil Action No. 1847–72; and Maurice H. Stans v. Lawrence F. O'Brien, Civil Action No. 1854–72, were consolidated for purposes of discovery by Order of the Court dated February 16, 1973.

## III. Discussion

A. *These Subpoenas Are Not So Broad And Sweeping As To Be Unreasonable Or Oppressive, and Are Therefore Valid Under The Federal Rules of Civil Procedure.*

Rule 26 of the Federal Rules of Civil Procedure contains the general provisions relating to discovery. It has long been held that the deposition-discovery rules are to be accorded a broad and liberal treatment,[2] and that subject to certain specific limitations, discovery is to be allowed as to any matter that is relevant to the subject matter of the action.[3] Despite this liberal policy, Movants argue that the subpoenas should be quashed under those provisions of Rules 26 and 45 which state that such action may be taken by the Court where the subpoenas would cause undue "annoyance, embarrassment, oppression, or undue burden" or are "unreasonable and oppressive."

The Court does not find the subpoenas so unreasonable or oppressive as to justify the action requested by the Movants. Under the theory that relevance is not to be measured by the precise issues framed by the pleadings, but by the general relevance to the subject matter,[4] it would be difficult indeed for the Court to find that none of the material requested by the parties is relevant, particularly at this stage of the proceeding. Further, it is well established that if the requested material is relevant, discovery should be allowed without regard to admissibility at trial.[5] The fact that the materials requested cover an extended period of time and are voluminous will not render the subpoenas invalid,[6] especially in view of the fact that the subpoenas are limited to a reasonable period of time and specify with reasonable particularity the subjects to which the requested materials relate.[7] It is therefore evident that application of these general principles precludes the granting of relief to Movants under the Federal Rules of Civil Procedure.

B. *The Unique Circumstances and Great Public Importance of These Cases Compel a Finding by the Court That Movants Are Entitled to At Least a Qualified Privilege Under the First Amendment to the United States Constitution.*

Because of its finding that the subpoenas in question are not unreasonable or oppressive under the Federal Rules of Civil Procedure, the Court is directly confronted with a constitutional issue of the first magnitude. What is involved here is the right of the press to gather and publish, and that of the public to receive news, from widespread, diverse and ofttimes confidential sources. Movants have supplemented the record with numerous and persuasive affidavits of prominent figures of the Fourth Estate which assert that the enforcement of these subpoenas would lead to the disclosure and subsequent depletion of confidential news sources without which investigative reporting would be severely if not totally hampered. The competing consideration is the right of litigants to procure evidence in civil litigation. Underlying that right is the basic proposition that the public "has a right to every man's evidence" and that, in examining any claim of exemption from the correlative duty to testify, there is the "primary assumption that there is a general duty to give what tes-

---

2. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

3. 8 Wright & Miller, Federal Practice and Procedure: Civil § 2007.

4. 4 Moore's Federal Practice, ¶ 26.56 [1], p. 26–131 (2d ed. 1972).

5. Freeman v. Seligson, 132 U.S.App.D.C. 56, 405 F.2d 1326 (1968); Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 280 F.2d 654 (1960).

6. See Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500 (1928); O'Malley v. Chrysler Corp., 160 F.2d 35 (C.A.7 1947).

7. Brown v. United States, *supra*; United States v. Medical Society, 26 F.Supp. 55 (D.D.C.1938).

timony one is capable of giving and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." [8] These cases all are exceptional on the facts alleged and thus require particular scrutiny by the Court.

The Court is well aware that other courts in "civil" and "criminal" cases,[9] and the Supreme Court of the United States in a landmark case involving a newsman's testimony before a grand jury,[10] have been reluctant in the absence of a statute to recognize even a qualified newsman's privilege from disclosure of confidential news sources. In view of the decisions and circumstances present in the above-cited cases, it is instructive to note what is *not* present in the instant cases. These cases are not "criminal" cases, and even though they are primarily actions for money damages, their importance transcends anything yet encountered in the annals of American judicial history. Moreover, Movants are not parties to the actions, but have merely been called to testify and produce documents at deposition. The parties on whose behalf the subpoenas were issued have not demonstrated that the testimony and materials sought go to the "heart of [their] claim," as was found to be true in the case of Garland v. Torre.[11] What *is* ultimately involved in these cases between the major political parties is the very integrity of the judicial and executive branches of our government and our political processes, for without information concerning the workings of the government, the public's confidence in that integrity will inevitably suffer.[12] This is especially true where, as here, strong allegations have been made of corruption within the highest circles of government, and in a campaign for the Presidency itself. This Court cannot blind itself to the possible "chilling effect" the enforcement of these broad subpoenas would have on the flow of information to the press, and so to the public.[13] This Court stands convinced that if it allows the discouragement of investigative reporting into the highest levels of government no amount of legal theorizing could allay the public suspicions engendered by its actions and by the matters alleged in these lawsuits.

It is of critical importance in these cases to note and bear in mind that the main purpose of the judicial system—a search for the truth—must be flexible in order to accommodate itself to the needs of our times and the needs of an individual case. The cases at bar are unprecedented in the annals of legal history and have raised more than one issue of first impression. In such circumstances, the Court is called upon to fashion a remedy consistent with the ends of justice. In proceeding to fashion a remedy in the instant cases, the Court remains in full accord with the language of Mr. Justice Powell's concurring opinion in Branzburg v. Hayes, in which he stated: [14]

---

8. 8 Wigmore, Evidence, § 2192, p. 70 (McNaughton rev. 1961). See United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950).

9. See, *e. g.*, Garland v. Torre, 259 F.2d 545 (C.A.2), cert. denied, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958); Murphy v. Colorado (Colo.Sup.Ct., unreported opinion), cert. denied, 365 U.S. 843, 81 S.Ct. 802, 5 L.Ed.2d 810 (1961); In re Goodfader, 45 Hawaii 317, 367 P.2d 472 (1961); State v. Buchanan, 250 Or. 244, 436 P.2d 729, cert. denied, 392 U.S. 905, 88 S.Ct. 2055, 20 L.Ed.2d 1363 (1968).

10. Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

11. 259 F.2d at 550.

12. Of equal importance is the necessity of a well-informed public which is fully able to participate in the political process. This has long been recognized by the Supreme Court to be a basic concern underlying the First Amendment's protection of freedom of the press. See, *e. g.*, New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936).

13. See Baker v. F. & F. Investment, 470 F.2d 778, 782 (C.A.2 1972).

14. 408 U.S. at 709–710, 92 S.Ct. at 2671.

"The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony. . . . The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions."

The Court has noted the above constitutional interest—an interest which translates into nothing less than the problem of maintaining "an informed public capable of conducting its own affairs. . . . "[15] Against this interest must be balanced the interests of the parties to receive evidence going to the substance of their claims. Yet there has been no showing by the parties that alternative sources of evidence have been exhausted or even approached as to the possible gleaning of facts alternatively available from the Movants herein. Nor has there been any positive showing of the materiality of the documents and other materials sought by the subpoenas. In the face of these considerations the parties still insist that Movants in effect open their doors for inspection. The scales, however, are heavily weighted in the Movants' favor.

The recognition that Movants are entitled to a qualified privilege from having to testify under the circumstances of these cases is not totally without legal precedent. Thus, in Baker v. F. & F. Investment, the Second Circuit held that a reporter could not be compelled by civil discovery to reveal a confidential source who had informed him of discriminatory practices by sellers of homes in the City of Chicago. The Court stated:[16]

"[T]he [Supreme] Court's concern with the integrity of the grand jury as an investigating arm of the criminal justice system distinguishes Branzburg from the case presently before us. If, as Mr. Justice Powell noted in that case, instances will arise in which First Amendment values outweigh the duty of a journalist to testify even in the context of a criminal investigation, surely in civil cases, courts must recognize that the public interest in non-disclosure of journalists' confidential news sources will often be weightier than the private interest in compelled disclosure."

So also, Chief Judge Sirica of this Court noted in United States v. Liddy that considerations in civil discovery are vastly different from those in the criminal context and "First Amendment values will weigh differently."[17] And the Branzburg Court itself declared that "without some protection for seeking out the news, freedom of the press could be eviscerated."[18]

Moreover, the Court in no way wishes to imply that today's ruling constitutes the implicit recognition of an absolute privilege for newsmen. Such would clearly be improper under the Branzburg decision. It may be that at some future date, the parties will be able to demonstrate to the Court that they are unable to obtain the same information from sources other than Movants, and that they have a compelling and overriding interest in the information thus sought. Until that time, however, the Court will not require Movants to testify at the scheduled depositions or to make any of the requested materials available to the parties.

## IV. CONCLUSION

In conclusion, the Court notes that the First Amendment entitles the public to more than a right to know. It also requires that any incursions into the areas protected by the Bill of Rights will be given a prompt judicial inquiry and hopefully one that will not only be sound but which the public will also un-

15. Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 392, 89 S.Ct. 1794, 1807, 23 L.Ed.2d 371 (1969).

16. 470 F.2d 778, 784–785 (C.A.2 1972).

17. 354 F.Supp. 208 (1972), Mem. op., 9, n. 14.

18. 408 U.S. at 681, 92 S.Ct. at 2656.

derstand and accept. Government generally and the courts in particular must always stand first in the vanguard of upholding the spirit as well as the letter of the First Amendment freedoms which are among the most precious of a citizen's fundamental rights. This is what this Court understands legitimate and necessary "strict construction" of the Constitution to be all about. This includes recognition of a special role for the press, for as written by James Madison: [19]

> "A popular government without popular information or the means of acquiring it is but a prologue to a farce or tragedy or perhaps both."

The Court will enter an order that the subpoenas be quashed.

---

19. 6 Writings of James Madison, 298 (Hunt ed. 1906).