**NATIONAL ASSOCIATION FOR COMMUNITY DEVELOPMENT et al.,
Plaintiffs,**

**v.**

**James D. HODGSON et al., Defendants.**

**Civ. A. No. 1059–72.**

United States District Court,
District of Columbia.

March 30, 1973.

19. 6 Writings of James Madison, 298 (Hunt ed. 1906).

Sarah C. Carey, Judith F. Mazo, Washington, D. C., for plaintiffs.

James F. McMullin, Asst. U. S. Atty., Washington, D. C., for defendant Hodgson.

William M. Phillips, Richmond, Va., for defendant Interstate Conference of Employment Security Agencies.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Plaintiffs in this case are a group of four organizations which purports to represent those who are unemployed. They are suing the Labor Department and an organization known as the Interstate Conference of Employment Security Agencies (I.C.E.S.A.), which is an organization consisting of the various state unemployment offices. Plaintiffs allege that I.C.E.S.A. indulges in lobbying efforts, and that because it receives Congressionally-appropriated funds, it and the Labor Department—the department which makes the funds available to the I.C.E.S.A.—are in violation of 18 U. S.C. § 1913 (1970). This section provides:

No part of the money appropriated by any enactment of Congress shall, in the absence of express authorization by Congress, be used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, letter, printed or written matter, or other device, intended or designed to influence in any manner a Member of Congress, to favor or oppose, by vote or otherwise, any legislation or appropriation by Congress, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation; but this shall not prevent officers or employees of the United States or of its departments or agencies from communicating to Members of Congress on the request of any Member or to Congress, through the proper official channels, requests for legislation or appropriations which they deem necessary for the efficient conduct of the public business.

Plaintiffs allege that they are harmed because as representatives of those who must deal with the various state unemployment commissions in order to receive compensation, their positions on legislation are usually opposite to the I. C.E.S.A. Therefore, they allege that the government's subsidy of the I.C.E.S.A. not only is illegal, but gives an unfair advantage to the I.C.E.S.A. since both plaintiffs and the I.C.E.S.A. are in direct competition vis-a-vis lobbying efforts regarding any legislation affecting the area of unemployment compensation. For relief, plaintiffs seek to enjoin the Department of Labor (DOL) from authorizing, and I.C.E.S.A. from receiving, any federal funds for the purpose of lobbying.

The matter is now before the court solely on a motion by defendants I.C.E. S.A. and the DOL for dismissal. At this stage of the proceedings the court shall make no decision whether or not defendants have violated Section 1913. However, for purposes of the motion, the law requires the court to accept the pleaded allegations of the complaint as admitted. The law will not allow this court to dismiss the cause of action un-

less it appears to be a certainty that plaintiffs are entitled to no relief under any state of facts which could be proved in support of the claim. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed. 2d 652 (1972); Walker Process Equip. v. Food Mach. & Chemical Corp., 382 U. S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1957); Carter v. Carlson, 144 U.S. App.D.C. 388, 447 F.2d 358 (1971); Jones v. Rogers Memorial Hospital, 143 U.S.App.D.C. 51, 442 F.2d 773 (1971). Defendants allege the following grounds in support of their motion:

### I.  Common Name

Defendant I.C.E.S.A. alleges that pursuant to Rule 17(b), Fed.R.Civ.P., it cannot be sued in its common name because it is an unincorporated association. This rule provides that the capacity to sue or be sued shall be determined by the law of the state in which the district court is held, *except* that an unincorporated association which has no such capacity by the law of such state may sue or be sued in its common name *"for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States."* [emphasis supplied] *Id.* Defendant I.C.E.S.A. relies primarily on Judge Richey's opinion in Democratic Nat'l Committee v. McCord, 356 F.Supp. 1394 (D.D.C.1972), where he found that in the District of Columbia unincorporated associations may not sue or be sued. Moreover, Judge Richey found the "substantive right" exception inapplicable to his case and therefore held that the court lacked *in personam* jurisdiction as to both the Democractic Nat'l Committee and the Committee to Re-Elect the President and dismissed these organizations from the action. See Fennell v. Bache, 74 U.S.App.D.C. 247, 123 F.2d 905 (D.C.Cir.1941); Matson v. Mackubin, 61 U.S.App.D.C. 102, 57 F.2d 941 (D.C.Cir.1932).

■ However, it is not difficult to distinguish *McCord* from the case at bar. Although the law of the District of Columbia does not permit an unincorporated association to sue or be sued, the "substantive right" exception can apply to the present case even though it clearly did not apply in *McCord.* The statute involved in the *McCord* case was the Civil Rights Act—42 U.S.C. § 1985(3) (1970). This statute has been held only to apply to natural "persons", *i. e.,* even a corporation is not a person under the civil rights laws, much less an unincorporated association. Thus, the exception in Rule 17(b) which allows an unincorporated association to sue or be sued for the purpose of enforcing a substantive right existing under the laws of the United States could not apply when those laws are the civil rights provisions, since no substantive right can exist for anything other than a natural person. However, when a party seeks to take advantage of the "substantive right" exception and the laws under which that alleged right originate do not specifically limit the right to "persons" but rather say nothing one way or the other, a court is free to decide the applicability of the Rule 17(b) substantive right exception on the merits of the particular case before it. In the present case, plaintiffs base their cause of action on a penal statute, 18 U.S.C. Section 1913 (1970). If the court finds that plaintiffs were substantially injured by activities of the defendants, such activities being illegal under Section 1913, and if the court finds that plaintiffs may sue to redress those injuries even though the statute itself includes only criminal remedies, then the plaintiffs would qualify under the "substantive right" exception in Rule 17(b) and the "common name" ground for defendants' motion to dismiss should be denied.

### II.  Civil Suit based on Penal Statute

■ Defendants argue that plaintiffs cannot institute a civil suit based solely on a penal statute. However, the state of the law seems to weigh heavily in plaintiffs' favor. The Supreme Court has treated the issue in several cases beginning with Texas & Pacific Railway

Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). In that case the Court stated: "[w]here a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law". The Court further stated: "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied". *Id.* at 39, 36 S.Ct. at 484. In a more recent case, Wyandotte Transportation Co. v. United States, 389 U.S. 191, 202, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), the Court reaffirmed its position in earlier cases, finding that a penal statute can give rise to a civil cause of action (1) where criminal liability was inadequate to insure the full effectiveness of the statute which Congress had intended, (2) where the interest of the plaintiffs falls within the class of interests that the statute was intended to protect, and (3) where the alleged harm that had occurred was of the type that the statute was intended to forestall. *Id.* See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (penal section of S.E.C. Laws held to provide private right of action).

One of the most recent cases to affirm the right of private parties to use a penal statute as the basis for a civil cause of action comes from our own District Court. In Common Cause v. Democratic National Committee, 333 F.Supp. 803 (D. D.C.1971), Judge Parker discussed the cases noted above as well as authorities from the states and other circuits and found that the three factors enunciated in the *Wyandotte* decision were present in the case before him. Thus, he sustained a civil cause of action based sole-ly on 18 U.S.C. Sections 608, 609 (1970), which proscribed limits on compaign contributions and expenditures and set out criminal sanctions for those who exceeded those limits. *Id.* at 809–814.

Viewing the three criteria set out in *Wyandotte,* it is quickly observable that the intent of Congress in passing the criminal statute in question is important to each of the three requirements. Unfortunately, in Section 1913 plaintiffs have dusted off a statute which, because of its obscurity, may render impossible a precise judgment concerning the intent of Congress in passing the legislation. There appears to be no record of any prosecutions under the statute. Only one completely unrelated case even mentions it, and that case merely lists it in a general footnote. A check of the statute's legislative history back to 1919, including floor debates, three house reports, and one senate report, reveal no statement of intent. In fact, the only place this section is even listed is in H. Rept. 11 to accompany H.R.3478, May 28, 1919, and this report merely records the words of the statute with not one word of explanation.[1]

However, the fact that there is no specific statement of the intent of Congress does not necessarily mean that plaintiffs' case should fall for failure to meet the *Wyandotte* criteria. Obviously, Congress intended to remedy some problem or further some cause, otherwise they would not have bothered enacting the statute. The fact that there is no specific statement of intent to be found in the legislative history of the bill of which Section 1913 was a part, simply means that the court must extract Congressional intent from analogous legislation and from the words of the statute itself.

Briefly put, Section 1913 makes illegal the government subsidy of lobbying. Because lobbying is the subject of Con-

---

1. The probable reason for the obscurity of the statute lies in the fact that though it is a criminal provision, it was tacked on to the Third Deficiency Appropriations Act of 1919, and all of the debate and discussion both on the floors of Congress and in the conference reports was centered around the pros and cons of appropriating monies for the various items in the proposed bill. (*e. g.*, sewers for D.C., Federal hospital for Chicago, Naval munitions, etc.)

gressional legislation found elsewhere in the Code, it is instructive to note the purpose and intent of these enactments dealing with the same subject as Section 1913. In 1946, Congress passed the Federal Regulation of Lobbying Act, 2 U.S.C. Section 261 et seq. (1970), which required registration of lobbyists and detailed accounts of lobby contributions. The statute provided a $5000 fine or imprisonment for violating any of the registration provisions. In commenting upon the purpose of this Act, the Supreme Court stated in United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1953):

> "Present day legislative complexities are such that individual members of Congress cannot be expected to explore the myriad pressures to which they are regularly subjected. Yet full realization of the American ideal of government by elected representatives depends to no small extent on their ability to properly evaluate such pressures. Otherwise the voice of the people may all too easily be drowned out by the voice of special interest groups seeking favored treatment while masquerading as proponents of the public weal. This is the evil which the Lobbying Act was designed to help prevent."

*Id.* at 625, 74 S.Ct. at 816.

Although the Lobbying Act and the *Harriss* case post date the earliest enactment of what is now Section 1913, it does not seem unreasonable to attribute the general purpose of the Lobbying Act to Section 1913. This general purpose when combined with the plain meaning of the words of the statute, clearly indicates that the intention of Congress in passing Section 1913 was to prevent corruption of the legislative processes through government financial support of an organization "intended or designed to influence in any manner a Member of Congress, to favor or oppose . . . any legislation or appropriation" and thereby precludes the drowning out of the privately financed "voice of the peo-

ple" by a publicly funded special interest group.

■ Plugging the intent of Congress as thus stated into the *Wyandotte* criteria persuades the court that those requirements are satisfied by plaintiffs vis-a-vis Section 1913. The first standard is satisfied because the fact that there have been no prosecutions under the statute and the fact that the criminal sanctions of Section 1913 are limited to "an officer or employee of the United States or of any department or agency thereof" thereby precluding sanctions being exacted against I.C.E.S.A., indicates that mere criminal liability is inadequate to insure the Congressionally intended effectiveness of the statute. The second *Wyandotte* requirement is satisfied in that the interest of the plaintiffs and the people for whom they speak, the desire to compete fairly in the lobbying arena with parties representing opposite points of view rather than having to face opposition muscled with funds from the very legislative body which both groups are trying to influence, clearly falls within that class of interests which the statute was intended to protect. Finally, the third *Wyandotte* criteria is met since the alleged harm, the drowning out of the "voices of the people" by a competing lobbying group subsidized by the federal government is the type of harm the statute is intended to forestall. Therefore, it is clear that plaintiffs may base their cause of action on the criminal statute, Section 1913. Moreover, consistent with the court's discussion under "I" above, it appears reasonable that plaintiffs are attempting to enforce a "substantive right existing under the . . . laws of the United States", to wit Section 1913, and, therefore, pursuant to Rule 17(b), plaintiffs, as unincorporated associations, may sue, and defendant I.C.E.S.A., as an unincorporated association, may be sued in their common names.

III. *Standing—Case or Controversy*

Defendants, citing Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L. Ed.2d 636 (1972), maintain that plain-

tiffs as "representatives of the public" bringing a public action do not have "standing", *i. e.*, the constitutional requirement that federal courts adjudicate only in the context of a genuine case or controversy, has not been met.

The basic rule of standing in the federal courts is that regardless of the ultimate determination on the facts, plaintiffs have standing if they "[allege] such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues . . ." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), the Supreme Court codified the modern test of standing. The standard is met if (1) "the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise," and (2) "the interest sought to be protected by the complaint is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Data Processing, supra,* 397 U.S. at 152–153, 90 S.Ct. at 829–830.

In *Sierra Club,* the Court held that a public interest organization has standing to challenge interpretations or implementation of federal statutes as harmful to the public generally as long as the organization alleges that it or its members are specifically injured by the activity in question. In *Sierra Club,* plaintiffs, a membership corporation with a "special interest in the conservation and sound maintenance of the national parks, game refuges, and forests of the country," sought a declaratory judgment and an injunction restraining federal officials from approving an extensive skiing development in the Mineral King Valley in the Sequoia National Forest. The Court found that plaintiffs lacked standing since "[n]owhere in the pleadings or affidavits did the Club state that its members use Mineral King for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions of the respondents." *Id.* 405 U.S. at 735, 92 S. Ct. at 1366. Thus, the holding in *Sierra Club* was really of a rather limited, technical nature—a matter of pleadings. In fact, the Court made clear that "[their] decision does not, of course, bar the Sierra Club from seeking in the District Court to amend its complaint by a motion under Rule 15, Federal Rules of Civil Procedure," and that "[i]t is clear that an organization whose members are injured may represent those members in a proceeding for judicial review." *Id.* at 735, n. 8, 92 S.Ct. at 1366.

■ Because Sierra Club merely requires an organization to *allege* actual injury to the organization and to the individual members of that organization, it is instructive to consider plaintiffs' pleadings in the case at bar. Plaintiffs assert direct injury because defendant I.C.E.S.A.'s alleged federally-financed lobbying activity which: (1) promoted legislation to concentrate federal manpower programs in the state employment security agencies, thereby reducing the financing authority and employment opportunities of plaintiffs' members; (2) impeded the enactment of a permanent program of federally-supported public service employment; (3) promoted legislative positions that have the result of reducing the effectiveness of plaintiffs' members in meeting the needs of the poor; and (4) generally competed unfairly with lobbying activities of the plaintiffs since defendant's lobbying activities draw resources from federal funds while plaintiffs must use their own finances to conduct their lobbying. Although this court makes no judgment regarding the varacity of these allegations, it seems clear that plaintiffs do reasonably *allege* actual and individualized injury as a result of action on the part of both defendants. Thus, this court finds that plaintiffs do have standing under *Sierra Club* and *Data Processing.* Moreover, since plaintiffs do have standing, they may also raise is-

sues regarding injury to the interests of the public. *Sierra Club, supra*; Scanwell Laboratories, Inc. v. Schaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (D.C. Cir. 1970); S.C.R.A.P., et al. v. United States, et al., 346 F.Supp. 189 (D.C.C. 1972). Therefore, defendants' motion to dismiss based on the ground of standing is denied.

## IV. *Jurisdiction*

Plaintiffs allege federal question jurisdiction pursuant to 28 U.S.C. Section 1331 (1970). Defendants challenge this jurisdiction maintaining that neither a federal question nor the jurisdictional amount ($10,000) is present.

### A. *Federal Question*

■ Defendant I.C.E.S.A. argues that as to it, this case does not arise under federal law because Section 1913 only applies to federal employees. The principle seems well established that a district court has jurisdiction under 28 U.S.C. Section 1331 (1970), where plaintiffs' claims will be sustained if a statute of the United States is given one construction, and the claim defeated if it is given another construction. Wheeldin v. Wheeler, 373 U.S. 647, 649, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); Bell v. Hood, 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The only exception to this rule is the instance where the claims alleged under federal law are frivolous or immaterial, asserted solely for the purpose of gaining jurisdiction. *Id.*

■■ In the present case plaintiffs assert that Section 1913 prohibits the use of any Congressionally-appropriated money to influence the legislative policies of Members of Congress. Although the law's penal sanctions are limited to federal employees, the reasonably inferred intent of the statute as well as the language of the provision itself are persuasive that the acts declared are not so limited to federal employees. Plaintiffs' claims can only be resolved by construction and enforcement of Section 1913. Moreover, the fact that defendant I.C.E.S.A. construes Section 1913 to lim-

it a cause of action to federal employees while an opposite construction, which is just as reasonable, would place I.C.E.S. A. within plaintiffs' grasp, argues that the *Wheeldin-Bell* rule has been complied with—i. e., the plaintiffs' claim rises or falls depending on the construction of the statute. Thus, suits brought to enforce federal statutory rights do "arise under" federal law for purposes of federal question jurisdiction even though the federal statute at issue may not explicitly provide a private right of action. See Common Cause v. Democratic National Committee, *supra*. Therefore, federal question jurisdiction lies.

### B. *Jurisdictional Amount*

■ Defendant I.C.E.S.A. argues that plaintiffs lack federal jurisdiction since they cannot aggregate discrete claims to reach the $10,000 minimum under Pinel v. Pinel, 240 U.S. 594, 36 S. Ct. 416, 60 L.Ed. 817 (1916), and its progeny. However, these cases seem irrelevant to the present suit because plaintiffs are not seeking to aggregate separate claims for monetary damages but instead are challenging the use of a single fund of $200,000 which plaintiffs allege is used by I.C.E.S.A. for illegal purposes. In 1971 the United States Court of Appeals stated that in suits for declaratory and injunctive relief "the amount in controversy may be measured by either 'the value of the right sought to be gained by the plaintiff . . . [or] the cost [of enforcing that right] to the defendant'". Tatum v. Laird, 144 U.S.App.D.C. 72, 76, 444 F.2d 947, 951 (D.C. Cir. 1971), rev'd on other grounds, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), quoting from Blackmun, J., in Hedberg v. State Farm Mutual Automobile Insurance Co., 350 F.2d 924 (8th Cir. 1963). Even more recently in Common Cause v. Democratic National Committee, the court recognized that in suits for equitable relief, the underlying economic basis for the complaint rather than monetary gain to the plaintiffs is the measure of the jurisdictional amount under 28 U.S.C. Section 1331(a). *Supra*, 333 F.Supp. at 807.

Since the underlying economic basis of the complaint is allegedly $200,000, and since the enjoining of the use of these funds, as plaintiffs ask, would cost the defendants in excess of $10,000, it would appear at this juncture that plaintiffs' pleadings have satisfied the jurisdictional amount requirement of Section 1331. Therefore, defendants' motion for dismissal on grounds of lack of jurisdiction is denied.

## V. *Venue*

█ Standing in the face of defendant I.C.E.S.A.'s contention that venue in this court is improper is the relevant venue statute, 28 U.S.C. Section 1391(b) (1970). This provision locates venue in the judicial district (1) "where all the defendants reside" or (2) "in which the claim arose". In Denver and Rio Grande R.R. Co. v. Brotherhood of Railroad Trainmen, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967), the Supreme Court stated that the phrase "in which the claim arose" applies to unincorporated associations sued in their common names. It seems clear that plaintiffs' claim against I.C.E.S.A. arises in the District of Columbia. The operative facts that give rise to plaintiffs' claim against I.C.E.S.A. are that funds appropriated by Congress are allegedly being used to influence members of Congress regarding their position on manpower legislation contrary to a federal statute. Furthermore, the I.C.E.S.A. maintains its office and staff in the District of Columbia at the Manpower Administration of the Department of Labor (Longfellow Building, Room 1104), where plaintiffs allege a substantial part of the work of that office is to coordinate and support the I.C.E.S.A.'s lobbying activities. In addition, Congress meets, considers, passes legislation, and appropriates funds in the District of Columbia. In short, although only one is needed, both of the Section 1391(b) venue bases are satisfied in that the defendant resides in the District of Columbia and the claim arose in the District of Columbia. Therefore, defendant I.C.E.S.A.'s claim of improper venue has no merit.

## VI. *Other Grounds*

█ Defendant I.C.E.S.A. asserts that the complaint is not justiciable. However, in *Common Cause, supra,* Judge Parker held that in a civil action brought for a violation of a federal statute which provides, on its face, only criminal remedies, ". . . there can be no doubt that 'the duty asserted can be judicially identified and its breach judicially determined . . .,' as easily as in a criminal action." *Id.* 333 F. Supp. at 814, quoting from Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). See discussion in section "II", *supra.*

█ Defendant I.C.E.S.A. also maintains that the complaint fails to state a claim upon which relief can be granted because the I.C.E.S.A. has no power to control its members. It would seem that the issue of whether I.C.E.S.A. can, in fact, control the activities of its members is premature, a factual question properly to be determined at discovery and trial. Moreover, the relief sought by plaintiffs does not require action on the part of I.C.E.S.A. members. Rather plaintiffs ask for a bar to the future use of Congressional funds for the support of lobbying activities, a bar which seems to be wholly within the power of the court to assert through declaratory and injunctive relief.

Again, the court emphasizes that it makes no judgment concerning the merits of plaintiffs' claims. However, for the reasons noted above, the motion to dismiss filed by defendants I.C.E.S.A. and DOL be and hereby is denied.