**NATIONAL TREASURY EMPLOYEES' UNION et al., Plaintiffs,**

v.

**Alan K. CAMPBELL, Director, Office of Personnel Management, Defendant.**

**Civ. A. No. 79–2673.**

United States District Court, District of Columbia.

Jan. 15, 1980.

---

Robert M. Tobias, Gen. Counsel, William E. Persina, Associate Gen. Counsel, Nat. Tres. Employees Union, Washington, D. C., for plaintiffs.

David Glass, Dept. of Justice, Civ. Div. and Royce Lamberth, Asst. U. S. Atty., Civ. Div., Washington, D. C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

### Introduction

This suit arises from certain lobbying activities by the defendant, the Director of the Office of Personnel Management (OPM), in support of the Federal Employees Compensation Reform Act of 1979 (Compensation Act), which was introduced into both houses of Congress on June 14, 1979. The plaintiff, the National Treasury Employees Union (NTEU), seeks declaratory relief and preliminary and permanent injunctive relief from these activities, alleging violation of two statutes.

The defendant has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), contending (1) that the plaintiff lacks standing to bring this action, (2) that neither statute at issue creates a private cause of action, (3) that the requirements for preliminary injunctive relief have not been shown, and (4) that regardless of these other points neither statute renders the defendant's activities illegal. The parties having fully addressed all issues in their briefs and at oral argument, the court will treat the defendant's motion as one for summary judgment. Fed.R.Civ.P. 12(b).

The court rules for the defendant, finding that the parties lack standing and that neither statute gives rise to a private cause of action. For these reasons preliminary injunctive relief is inappropriate, and the court need not reach the question of whether either statute applies to the conduct in question.

### Background

The activity of which the plaintiff complains is the use of an undetermined amount of OPM's funds for the preparation and mailing of copies of a certain letter to various publications across the country. The letter, dated June 1, 1979, set forth the views of OPM Director Alan Campbell with respect to the desirability of the Compensation Act, and it requested editorial support for the legislation. These facts were stipulated by the parties.

NTEU is an unincorporated association representing approximately 100,000 employees of several federal agencies. Among its primary functions is lobbying in support of or in opposition to legislation that affects its

members. NTEU has publicly opposed the Compensation Act, stating that it would adversely affect federal employees in general and NTEU's members in particular.

NTEU argues that Campbell's use of public funds to support the Compensation Act not only directly injures itself and its members but also violates two statutes, both of which, according to NTEU, give rise to private rights of action. The first of these statutes, section 607(a) of the Treasury, Postal Service and General Appropriations Act of 1979, P.L. 95–429, 92 Stat. 1001, provides,

> No part of any appropriation contained in this or any other Act, or of the funds available for expenditure by any corporation or agency, shall be used for publicity or propaganda purposes designed to support or defeat legislation pending before Congress.

The second statute, 18 U.S.C.A. § 1913 (1970), provides,

> No part of the money appropriated by any enactment of Congress shall, in the absence of express authorization by Congress, be used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, letter, printed or written matter, or other device, intended or designed to influence in any manner a Member of Congress, to favor or oppose, by vote or otherwise, any legislation or appropriation by Congress, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation . . . .

*Standing*

■ The basic requirement of standing is injury in fact. In addition, a plaintiff must show some causative link between the injury allegedly suffered and the action under protest. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

■ In this case the plaintiff has failed to show either that it has suffered any injury of a legally cognizable nature or that any adverse developments have occurred with respect to the Compensation Act that are causally related to the defendant's conduct. Even if NTEU could demonstrate that Campbell's letter had directly influenced newspaper editors in their positions regarding the Compensation Act, it would still have to show some harm resulting from the adoption of those positions. This it has not done. The link between Campbell's letter and the fate of the proposed legislation is too attenuated for the plaintiff to prevail. The court is aware that "economic injury (or its prospect)" can suffice to confer standing, L. Tribe, *American Constitutional Law* 82 (1978), and it is safe to say that Campbell hoped the ultimate impact of his letter would be on the Compensation Act rather than solely on the minds of various editors. Nevertheless, in asking this court to discern sufficient injury arising from that letter to give rise to a justiciable case or controversy, the plaintiff asks too much.

*Private Rights of Action*

At the outset the court notes the interrelationship of the issues of standing and the existence of private rights of action under given statutes. Professor Tribe has commented on this congruence of issues, stating, "In effect, someone is 'injured in fact' by an action for purposes of article III if the person has a statutory right to complain of the action in a federal court. . . ." L. Tribe, *supra* at 80. In other words, if someone has an implicit right of action under the statute, *i. e.*, a statutory right to complain, then he also has standing to bring the action. In this case the plaintiff has no statutory right to complain.

The case law in this area is sparse. No cases have been decided under section 607, and only two cases have addressed section 1913. *American Conservative Union v. Carter*, No. 79–2495, slip op. at 4–5 (December 14, 1979); *National Association for Community Development v. Hodgson*, 356 F.Supp. 1399 (D.D.C. 1973). In *American Conservative Union* Judge Robinson of this district court ruled that no private right of action was available under section 1913. As he observed, that section does not explicitly create a private right, and the sparse legis-

lative history offers no support for inferring such a right. He commented, moreover, that the logic of the statute—it provides for ordinary criminal penalties and also the removal from office of officials found to have violated its terms, but it omits reference to private rights of action—suggests that no private right was intended by Congress.

In *Hodgson*, this court denied the defendant's motion to dismiss for lack of a private right of action under section 1913. Despite the similarities of *Hodgson* to the case at hand, that case cannot be deemed controlling. Since that ruling the Supreme Court issued an opinion in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), that appears to establish a more rigorous standard for inferring a private right of action than did the opinion in *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), on which the court relied in *Hodgson*.

■ The *Cort* opinion states,

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted, ". . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

95 S.Ct. 2088. Applying this four-pronged test, the Court found that a cause of action should not be inferred in favor of a corporate shareholder against corporate directors under a criminal statute, 18 U.S.C. § 610, which prohibits corporations from making contributions in connection with certain elections. *See also Transamerica Mortgage Advisors, Inc. v. Lewis,* —— U.S. ——, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979) ("The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action."). Looking to the legislative intent underlying this statute, as well as the other factors set forth in *Cort*, this court cannot say that a private right of action exists under section 1913. To the extent that *Hodgson* is inconsistent with this position it is overruled.

■ With respect to section 607(a), NTEU's position has no more basis in the legislative history or the language or logic of the statute than with respect to section 1913. There is simply no reasonable ground for ruling that Congress intended by this purely prohibitive statute to authorize civil suits against government officials. The court shares the plaintiff's concern for private interest groups struggling to be heard over the voices of advocates supported by public funds. Nevertheless, the decision to provide such groups with private causes of action can be made only by Congress, and section 607(a) does not reflect such a decision.

*Conclusion*

For these reasons the plaintiff's case must fail. A Judgment in accordance with the foregoing accompanies this Memorandum Opinion.